UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAN DOUGLAS, an individual,<br><br>                Plaintiff,<br><br>v.<br><br>AMERICAN FINANCIAL RESOURCES, INC., dba eLEND or dba E Lend, a New Jersey corporation registered to do business in the State of Idaho,<br><br>                Defendant. | Case No. 1-16-cv-00353-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Before the Court is American Financial Resources, Inc.'s, (AmFi) motion to dismiss Plaintiff Alan Douglas's amended complaint, filed on September 26, 2016. The motion contends Douglas fails to state a claim upon which relief can be granted under Fed. Rule Civ. P. 12(b)(6). The Court scheduled a hearing for March 23, 2017. However, upon review of the record, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be

REPORT AND RECOMMENDATION - 1

significantly aided by oral argument, the motion will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d).

After carefully considering the parties' arguments and the record before it, as well as the authorities cited by the parties, the Court issues its report recommending AmFi's motion be granted.

## BACKGROUND[1]

Douglas purchased a manufactured home in Donnelly, Idaho, on March 31, 2015. AmFi provided financing so that Douglas could purchase of the home. On March 9, 2016, Ronald Garrett, an employee and agent of AmFi, informed Douglas he may qualify for a special streamline refinance loan that offered Douglas a lower interest rate than the original purchase loan. Douglas informed Garrett of his plans to build a garage, and asked whether the refinance loan would affect his future ability to close on a cash-out refinance loan within the next six months. Garrett informed Douglas that accepting the streamline refinance offer would not affect Douglas's plans or eligibility to acquire an additional cash-out refinance loan during the Spring or Summer of 2016. Garrett also told Douglas the streamline refinance offer would have "no catches." And finally, Garrett informed Douglas he could refinance "immediately" after the streamline refinance loan had closed, should he choose to do so.

On March 9, 2016, Douglas accepted the offer and entered into a streamline refinance loan agreement with AmFi, which loan was insured by the Federal Housing

---

[1] For purposes of the motion to dismiss, the factual allegations in the Amended Complaint (Dkt. 14) are accepted as true.

Administration (FHA). Douglas began making preparations to build his garage, which included hiring an architect and an engineer to draft construction plans.

In April of 2016, Douglas contacted Idaho Central Credit Union (ICCU) to inquire about qualifying for a cash-out refinance loan. He was approved for a cash-out refinance loan at an 85% loan to value ratio on his existing mortgage. Concurrently, Douglas continued toward closing on the Streamline Loan with AmFi, and closed on that loan on April 20, 2016.

On April 28, 2016, ICCU informed Douglas that, due to FHA regulations, he would have to wait six months, and make six mortgage payments toward the Streamline Loan, before he could close on the cash-out refinance loan. Douglas contacted Garrett, asking about the six-month FHA loan waiting period. Garrett informed Douglas that the FHA loan "'doesn't' stop Plaintiff from doing 'anything' with his home." Garrett also offered Douglas a cash-out refinance loan through AmFi, but could not match ICCU's 85% loan to value ratio; only FHA insured loans offered an 85% loan to value ratio on manufactured home loans.

Douglas alleges he relied upon Garrett's representations that he would be able to close on a cash-out refinance loan soon after closing on the Streamline Loan with AmFi. He further alleges that Garrett (and consequently AmFi) was aware of FHA's six month waiting period. Douglas alleges that, because of AmFi's misrepresentation and its deceptive actions, he cannot close on any cash-out refinance loan until December 1, 2016, and therefore cannot begin construction on his garage until the Spring of 2017.

**REPORT AND RECOMMENDATION - 3**

Douglas asserts a claim under the Truth in Lending Act, 15 U.S.C. § 1601, *et. seq.*, and the Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*, on the grounds that Garrett misrepresented to Douglas that he could close on a FHA cash-out refinance loan immediately after closing the Streamline Loan. Douglas claims he has suffered damages in excess of $75,000.

In his opposition to AmFi's motion to dismiss, Douglas concedes to dismissal of his TILA claim. Therefore, only the state law claim asserted under the ICPA remains.[2]

## ANALYSIS

**1.     Standard of Review**

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  A motion to dismiss allows a court "to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activities." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993), *quoted in Rheinschild Fam. Trust v. Rankin*, No. 1:15-CV-00194-EJL, 2016 WL 1170945 *3 (D. Idaho Mar. 24, 2016). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

---

[2] Douglas filed his complaint in the Fourth Judicial District Court for Ada County on July 14, 2016. The matter was removed to this Court on August 5, 2016, on the basis of federal question jurisdiction under the Truth in Lending Act. Additionally, the Amended Complaint asserts facts establishing diversity jurisdiction, as American is a New Jersey Corporation; Douglas resides in Idaho; and he claims damages in excess of $75,000.

unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.2008), *as amended*, (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.2005). The Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he is entitled to offer evidence to support the claims. *See Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007).

**REPORT AND RECOMMENDATION - 5**

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n. 1 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**2.    Judicial Notice**

AmFi asks the Court to take judicial notice of the FHA Single Family Housing Policy Handbook, attached to its memorandum filed in support of its motion. (Dkt. 18.) Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motion to dismiss into a motion for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004). The Court may also judicially notice documents incorporated by reference in the complaint. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

The Handbook is publically available via the U.S. Department of Housing and Urban Development's website.[3] Further, Douglas referenced FHA regulations in paragraph 45 of his amended complaint. (Dkt. 14.) Therefore, the Court finds the FHA Handbook is a proper subject for judicial notice under Fed. R. Evid. 201, and will consider it in connection with AmFi's motion to dismiss.

**3.      Consumer Protection Act Claim**

Douglas argues his amended complaint states a claim under the ICPA, because he relied upon AmFi's misrepresentation that he could obtain a cash-out refinance loan immediately after closing the Streamline Loan under FHA regulations. The purpose of the ICPA is to protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. Idaho Code § 48-601. The scope of the act is limited to acts and practices involving trade and commerce, and goods:

> (2) "Trade" and "commerce" mean the advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or distributing goods or services, either to or from locations within the state of Idaho, or directly or indirectly affecting the people of this state.
> \*\*\*
> (6) "Goods" mean any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, including certificates or coupons exchangeable for such goods.

Idaho Code § 48-602(2), (6).

---

[3] The Court located a copy of the handbook here:
https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/handbook_4000-1

REPORT AND RECOMMENDATION - 7

The Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, where a person knows, or in the exercise of due care should know, that he has in the past, or is:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have; [or]
> \*\*\*
> (17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer[.]

Idaho Code § 48-603(5), (17). The ICPA should be construed liberally. *Fenn v. Noah*, 133 P.3d 1240, 1245 (Idaho 2006), *overruled on other grounds by City of Osburn v. Randel*, 277 P.3d 353 (Idaho 2012).

First, it is unlikely the ICPA applies to the facts here. *See Idaho First Nat'l Bank v. Wells*, 596 P.2d 429, 432 (Idaho 1979). ("Although 'goods' defined under the act include intangible property which could encompass money, it would take a strained construction of the act to be able to hold that the signing of a personal guarantee for a loan to a corporation was a 'Purchase of goods.'").

Second, even if the ICPA does apply, based upon the facts alleged in the amended complaint, it does not appear Garrett made a misrepresentation or stated an untruth. Paragraphs 19 – 26 of the amended complaint detail what Douglas allegedly told Garrett. He informed Garrett of his intent "to close on an additional cash-out refinance loan to build a garage within six months…." Am. Compl. ¶ 22. Garrett informed Douglas that the Streamline Loan "would not affect [Douglas's] plans or eligibility to acquire a cash-out refinance loan during the spring or summer of 2016." *Id.* ¶ 25. Paragraphs 50 and 51

**REPORT AND RECOMMENDATION - 8**

indicate that Garrett, via AmFi, was able to offer Douglas a cash-out refinance loan. But, Douglas apparently did not like the terms of that loan, because "only FHA loans offered the 85% [loan to] value on manufactured homes."

Nowhere does the amended complaint allege that Garrett knew Douglas intended to apply for a FHA insured loan, or how much cash Douglas required to build the garage. Nonetheless, Douglas makes the assertion that AmFi, through Garrett, misled Douglas by "representing that [Douglas] could close out an additional FHA cash-out refinance loan after closing on the Streamline Loan." *Id.* at ¶¶ 63, 64 (emphasis added). Further, Douglas makes another illogical allegation that, because of AmFi's misrepresentation, he "cannot close on any cash-out refinanced loans for his manufactured home until December 1, 2016," yet in the preceding two paragraphs, Douglas indicated AmFi could offer him a cash-out refinance loan. *Id.* ¶¶ 50-52 (emphasis added).

Third, AmFi should not be held liable regarding a statement concerning Douglas's eligibility, via another lending institution, to qualify for and successfully close a FHA cash-out refinance loan. The Court finds the facts analogous to those in *Pardue v. Bankers First Federal Savings & Loan Ass'n*, 334 S.E. 2d 926, 927 (Ct. App. Ga. 1985). In *Pardue*, the court considered whether the borrowers' lender, who offered borrowers a discounted mortgage payoff plan to prepay their loan, was liable to borrowers for failing to inform them that the prepayment would result in tax liability. The court held that, "even if the bank had undertaken to advise appellants on their taxability and had misled appellants, they would not be entitled to rely on any such representations but would be 'under a duty to prosecute their own inquiries' concerning their tax liability." *Id.*

**REPORT AND RECOMMENDATION - 9**

The court in *Pardue* explained that, "[a]s a fundamental proposition, each taxpayer is, perhaps by definition, responsible for ascertaining his own tax status. Appellants' contention that the lender, in offering them a discount for prepayment, is responsible for appellants' failure to discover their own taxability, is nearly too absurd to note." *Id. See, e.g., Gonzales v. Associates Fin. Serv. Co. of Kansas, Inc.*, 967 P.2d 312, 324-25 (Kansas 1998) ("Transactions that merely appear unfair, or in retrospect are bad bargains, do not state a claim under the [Kansas Consumer Protection Act]," finding no actionable claim when the borrower was not foreclosed from finding out the facts on his own.).

Douglas readily could have asked ICCU whether his plan to close on the Streamline Loan immediately prior to closing the loan transaction with ICCU would affect his eligibility for the FHA insured cash-out refinance loan. ICCU approved Douglas for its loan product in April of 2016, which time period was concurrent with the approval process for the FHA insured Streamline Loan Douglas obtained from AmFi. It defies common sense that Garrett (and AmFi) should be responsible for ascertaining or advising Douglas about Douglas's eligibility for a loan product offered by another lending institution, when Douglas was not prevented from finding out the facts on his own from ICCU.

Finally, AmFi cites to the FHA Policy Handbook for its argument that Garrett's statements were true, and therefore not actionable. Although the Court need not consider this argument based upon its analysis, above, it appears that there is no six-month waiting period requirement under FHA guidelines to qualify for a cash-out refinance loan. (Dkt. 18-8 at 15 – 16.) The guidelines simply require that properties with mortgages must have

**REPORT AND RECOMMENDATION - 10**

a minimum of six months of mortgage payments, and that the borrower must have made all payments for all mortgages within the month due for the "previous 12 months or since the Borrower obtained the Mortgages, whichever is less." (Dkt. 18-8 at 15.) Here, Douglas had a prior mortgage and over twelve months of mortgage payment history before he obtained the Streamline Loan from AmFi. It is not clear to the Court why Douglas's payment history on his original purchase loan would not satisfy FHA guidelines applicable to cash-out refinances. Regardless, the Court need not speculate, or further analyze AmFi's final argument in support of dismissal.

## CONCLUSION

The Court is unclear why Douglas filed this suit seeking damages under the TILA and the ICPA. He may have had an equitable remedy under TILA, which grants consumers the right to rescind a mortgage loan transaction. *See* 15 U.S.C. § 1635(a) (Under TILA, an obligor has the "right to rescind ... until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section ... whichever is later."). Moreover, it is difficult to fathom what damages Douglas incurred, or how his damages could exceed $75,000, merely for a six-month delay in obtaining the funds required to build the garage he envisioned. *See* Am. Compl. ¶ 53 ("Due to [AmFi's] misrepresentation and deceptive actions, Plaintiff cannot begin construction on his garage until the spring of 2017.").

Based upon the foregoing analysis, the Court will recommend that AmFi's motion to dismiss be granted. Although the Court should generally recommend leave to amend, in light of the factual allegations of the amended complaint, the Court hesitates to do so.

The amended complaint would need to remedy the logical fallacies inherent in the current iteration, as discussed above.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      Defendant's Motion to Dismiss (Dkt. 18) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: March 20, 2017

_____
Honorable Candy W. Dale
United States Magistrate Judge